**MADERAS TROPICALES S. de R. L. de C. V., Plaintiff-Appellant,**

v.

**SOUTHERN CRATE & VENEER COMPANY, Defendant-Appellee.**

No. 76–4455.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1979.

Warren W. Wills, Jr., Atlanta, Ga., for plaintiff-appellant.

Albert P. Reichert, Jr., William F. Ladson, Jr., Macon, Ga., for defendant-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

In this Georgia diversity action, Maderas Tropicales, a society of limited responsibility organized under the laws of Honduras, appeals from an adverse judgment rendered on a directed verdict dismissing its breach of contract action against Southern Crate & Veneer Company, a Georgia corporation. We affirm, on the ground that plaintiff has shown no writing evidencing the alleged contract in a manner sufficient to satisfy the Georgia statute of frauds.[1]

## I

Southern Crate & Veneer Company manufactures and distributes wooden crates.[2] Necessary components of the crates are wooden cleats, sticks of wood whose ends are cut at angles in order to fit together to form the frame for a wirebound crate. Cleat production involves the operation of several different sawing machines which plane lumber down to the desired thickness, cut it into pieces of appropriate length, and miter the ends to the proper angle.

In July of 1973, Haynes Willingham met with Southern Crate's principal officers and discussed the feasibility of manufacturing cleats in Honduras for sale to Southern Crate. According to Willingham's testimony, those discussions concluded with an oral agreement that, if Willingham set up a cleat-producing operation in Honduras, Southern Crate would purchase its entire output. As evidence of the alleged oral agreement, Willingham introduced a letter dated July 31, 1973, on Southern Crate stationery, signed by the president of Southern Crate, addressed "To Whom It May Concern." The letter outlined the nature of Southern Crate's operations and its demand for cleats and recited Willingham's efforts to familiarize himself with cleat production. It then affirmed, in the opinion of Southern Crate, that Willingham had sufficient knowledge to set up a cleat-producing operation. In the concluding paragraph the letter stated:

> In our discussions we have informed Mr. Willingham that we stand willing and able to purchase all the cleats that he can manufacture which would cost us, F.O.B. our plant, no more than our cost of producing them here. Hopefully he will find an adequate supply of lumber at prices economical to the production of cleats and can have his operation in full swing in a matter of several months.

---

1. The parties do not dispute that Georgia law is applicable in this diversity action in ruling on the existence and enforceability of the agreement in question, a contract allegedly created in the State of Georgia.

2. In outlining the pertinent facts, we view the evidence in the light most favorable to Maderas Tropicales, the party opposing the motion below for a directed verdict.

The letter was used by Willingham to acquire financing and necessary licensing for the cleat operation.

During the year from July 1973 to July 1974, Willingham took the necessary steps to establish his cleat operation, including formation of Maderas Tropicales, plaintiff herein. On July 6, 1974, Maderas Tropicales began producing cleats in limited quantities with one shift on one cleat line. From July 6 through September of 1974, Southern Crate purchased the entire, although as yet limited, production of Maderas Tropicales. In approximately October of 1974, however, the president of Southern Crate informed Willingham that in light of expectations of reduced cleat demand Maderas Tropicales should cut down on its level of shipments. At the time, Willingham was preparing to increase production through addition of a second shift. From October of 1974 through June of 1975, Southern Crate continued to accept shipments of cleats from Maderas Tropicales but at a level below the latter's potential output.

Although informed in October of 1974 of Southern Crate's intention to purchase less than Maderas Tropicales' potential output, Willingham did not assert until August of 1975 that Southern Crate had a contrary legal obligation. In the meantime, in at least one communication with Southern Crate, Willingham expressed his hope that Southern Crate might at some time anticipate greater cleat needs. When Southern Crate's needs failed to increase, and efforts by Willingham to locate other purchasers proved largely futile, Maderas Tropicales ceased production and ultimately went out of business in September of 1975.

## II

In this suit, commenced in November of 1975, Maderas Tropicales seeks recovery from Southern Crate for damages ensuing from breach of the alleged agreement by Southern Crate to purchase the entire ultimate output of Willingham's proposed cleat-producing operation. Upon motion of the defendant, the district judge directed a verdict and rendered judgment in favor of Southern Crate. In our view, the only writing introduced by plaintiff to prove the alleged oral contract, the "To Whom It May Concern" letter of July 31, 1973, is insufficient as a matter of law to satisfy the requirements of the Georgia statute of frauds. The district court therefore correctly directed a verdict against plaintiff.[3]

The U.C.C.'s statute of frauds, as adopted in Georgia,[4] is clearly applicable to the al-

3. In light of our reliance on the statute of frauds, we may assume, despite serious doubts to the contrary, that the record contains sufficient evidence to create a jury question as to whether Southern Crate orally agreed to purchase the entire output of Willingham's planned cleat operation. Failure to comply with the statute of frauds renders any such oral agreement unenforceable.

In addition, we need not reach the question whether, assuming the existence of an enforceable agreement, Southern Crate gave sufficient notice of its intention to terminate the contract so as to relieve it of liability under Georgia law. See Ga.Code Ann. § 109A–2–309 (providing for termination at will of contracts of indefinite duration, provided that reasonable notice of termination is afforded).

4. Ga.Code Ann. § 109A–2–201 provides:
 (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way by action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
 (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.
 (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
 (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that

leged agreement involved in this case, a contract for the sale of goods (cleats) for the price of $500 or more. The statute provides, with limited exceptions, that such a contract is not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties." Ga.Code Ann. § 109A–2–201.[5] In the absence of such a writing, a contract which is otherwise valid may still be enforceable if it falls within any of three limited exceptions: 1) if the goods are to be manufactured specially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller has made a substantial beginning of their manufacture prior to repudiation by the buyer; 2) if the party against whom enforcement is sought admits in court that a contract has been made; or 3) with respect to goods for which payment has been made and accepted or which have been received and accepted. *Id.*

Maderas Tropicales relies on the "To Whom It May Concern" letter of July 31, 1973, and in particular its final paragraph, for compliance with the statute of frauds. However, Southern Crate's statement that it "stand[s] willing and able to purchase all the cleats that [Willingham] can manufacture" does not indicate, as required by the statute, that "a contract for sale *has been made* between the parties." At best, the letter might indicate that Southern Crate had made an offer to purchase future output which Willingham might accept at some future time by his conduct in establishing a cleat-manufacturing operation. At the time the letter was written, however, Will-

ingham had taken no such action, and the letter therefore fails to evidence that a contract had been made at that time. Thus, the "To Whom It May Concern" letter is insufficient to satisfy the statute of frauds' requirement of a writing.

The alleged oral agreement might still be enforceable if one of the exceptions to the writing requirement were applicable. In this case, however, no exception applies. Clearly, Southern Crate has not admitted at trial that a contract was made and Maderas Tropicales seeks enforcement of the alleged contract beyond the amount of goods which Southern Crate received and for which it paid. The only exception which might arguably be applicable is that relating to specially manufactured goods. The cleats involved in this case, however, are not so unusual or special that the very fact of their manufacture can testify to the existence of a contract for their sale to a particular buyer without the substantiation of a writing as required by the statute of frauds. It is not significant that the cleat market was tight during late 1974 and 1975 with the result that Willingham's efforts to find purchasers for his cleats were largely futile.[6] Evidence of temporary market conditions cannot affect the inescapable conclusion that the cleats themselves were suitable for sale to others than Southern Crate in the ordinary course of the seller's business. Thus, no exception to the statute of frauds' requirement of a writing is applicable in this case, and, in the absence of a sufficient writing, an oral agreement between the parties is unenforceable.

AFFIRMED.

the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (109A–2–606).

5. The writing must ordinarily be signed by the party against whom enforcement of the con-

tract is sought. Between merchants, however, the requirement of a writing is satisfied by a writing in confirmation of the contract which is received within a reasonable time by the party against whom enforcement is sought and which is sufficient to bind the sender. In any event, a contract is enforceable only with respect to the quantity of goods shown in the writing. Ga. Code Ann. § 109A–2–201 (quoted in full in the preceding footnote).

6. Maderas Tropicales managed to sell one container of cleats in June of 1975 to Franklin Crate, Inc., a crate company located in Florida.